(C.D. 4665)

AIR-SEA FORWARDERS, INC. *v.* UNITED STATES

Court No. 73-8-02256

(Decided June 29, 1976)

*Glad, Tuttle & White* (*Robert Glenn White* of counsel) for the plaintiff.
*Rex E. Lee*, Assistant Attorney General (*Andrew P. Vance* and *Jerry P. Wiskin*, trial attorneys), for the defendant.

RICHARDSON, Judge: The merchandise in this case, described on the invoice as flexible neck inspection lights, was exported from Japan in December, 1971, entered at the port of Los Angeles–Long Beach, California, and classified in liquidation under TSUS item 683.70 as flashlights at the duty rate of 35 *per centum ad valorem*. Plaintiff claims that the lights should be classified under TSUS item 683.80 as other portable electric lamps with self-contained electrical source at the duty rate of 13.75 *per centum ad valorem*.

The imported article consists of two parts, (1) a cylindrical plastic case measuring about 3½ inches high and 1⅜ inches in diameter at the top and 1⁹⁄₁₆ inches in diameter at the bottom, to the exterior surface of which an off-on slide switch is mounted, and (2) a tapered cylindrical metal cap measuring about 1¼ inches high from which protrudes a 5¼ inch long metal gooseneck extension at the end of which is affixed a metal lamp socket. The case is grey, the switch red, and the cap-extension-socket assembly is chrome colored. The mating ends of

the case and cap are threaded as also is the upper end of the lamp socket. After importation the article is equipped and marketed with a GE 222 lens-end bulb and it is operated with two "C" type batteries which the purchaser supplies.

Robert L. Weible, vice president and general manager of Aqua Dynamics, Inc., manufacturer and distributor of products for the marine, recreational vehicle, and industrial fields, testified that he was responsible for purchasing the article in issue, and for its sale and distribution after assembly and packaging. As to the usage the witness testified (R. 9–10):

> Q. Have you ever seen Plaintiff's Exhibit 1 in use?—A. Yes, I have.
>
> Q. What were those instances in which you have seen it in use?—A. The primary usage has been in our own facility, being that we have three companies and we are in the manufacturing business of various different types of products. The primary usage has been for inspecting inaccessible areas. For example, cylinders which have small ports, whereby the only way that you can inspect the internal diameter or internal surfaces of the cylinders is by inserting the small neck of the inspection light into the inside of the cylinder, and with the diffused light you can then inspect the inside surfaces of the area.

The witness stated that the imported article was sold as an inspection light.

Mr. Weible also testified that he agreed with the definition of the term "flashlight" which is contained in *Webster's New International Dictionary*, the unabridged edition (1949), at page 257 (said by counsel to be the same as the 1966 edition) as follows: "Flashlight: a small battery operated portable electric light." He distinguished the functions of a flashlight from that of the imported inspection light as follows (R. 51):

> The function of a flashlight, as I would define it, would be as I stated, to direct a beam of light at something, at some distance away from you, in order to see the object.
>
> This item, the Flex-O-Flash, I would say was designed to obtain light in an enclosed general area.

Fowler L. White, a foreman with Aqua Dynamics in 1972, testified as to on-the-job usage of the imported article as follows (R. 55–56):

> Q. What was the use to which you put it?—A. Well, we make an antenna, a marine type, and it consists of a 23-inch disk in which we place a dome. We have a dome that goes on top of it, and through this dome we have a stanchion, and you also have to have a coax' coming up from the Masonite disk to the dome, and this particular coax' has to clear the stanchion when you put it in. And this is an ideal light for us to go in and put it in the hole.

It's a one-eighth inch hole in the dome, and we can go in there and with a diffused light in there you can see which way this coax' runs, and it has to clear the stanchion.

The witness further testified that a flashlight, which he considered to be a hand-held object flashing a beam of light, could not be used for this purpose.

This is the substance of testimony offered on plaintiff's behalf. Defendant called four witnesses to give testimony in the case.

Robert E. Brindley, world-wide product director of flashlights and lanterns for Union Carbide Eastern, testified that he had designed "Just about all the flashlights that Union Carbide manufactures under the Eveready brand here in the U.S.A." (R. 60). With respect to the imported article he testified (R. 95–96):

Q. Mr. Brindley, what do you consider Plaintiff's Exhibit 1 to be—A. A flashlight.
Q. Please tell us why?—A. It performs basically the same function as all of the flashlights that I have ever seen.
Q. Mr. Brindley, based on your knowledge and experience, would Plaintiff's Exhibit 1 be considered to be a flashlight in the trade?—A. Yes.
Q. Why?—A. Because it's a hand-held battery operated device that illuminates.

The witness also stated that he agreed with Webster's definition of a flashlight which was read to the witness Weible, and that the imported article, called Flex-O-Flash, falls within that definition and that it is an inspection light. The witness stated that devices like the imported article are not new to the trade. And he testified concerning Union Carbide devices of this class and kind called flashlights with flexible extensions which placed a light source away from the case by means of a flexible member going back to 1940.

Harry E. Douglass, president of H. E. Douglass Engineering Sales Company, representative and distributor of electrical lighting and flashlights, among other things, testified that his company distributes a flashlight similar to the imported article (received in evidence as exhibit G) on behalf of Stewart R. Browne Manufacturing Company, for whom he formerly worked which he sells as a flashlight with an extended probe. Comparing the two the witness testified (R. 173):

Q. Mr. Douglass, are the W.O.L.F., Exhibit G, and the Flex-O-Flash, Exhibit 1, identical or different in function?—A. They are both flashlights operated in the same manner.

The witness considered exhibit G to be an inspection light and also a flashlight. He stated that he agreed with Webster's definition (of the term flashlight) which he heard read in court, and that in his opinion the imported article is a flashlight because it is a battery driven device

with a bulb screwed in the end of a shaft to either see what you are doing or where you are going.

Florence Irwin, owner and operator of an aircraft parts business called Aircraft Spruce and Specialty Company, testified that she sells the imported article which she purchases from Aqua Dynamics mainly through mail-order catalogs. She stated that it is sold as an inspection light primarily to aircraft builders and shop mechanics, and that she considers it to be a flashlight. In her catalog (exhibit I, p. 127) the imported article is described as "Handy gooseneck flashlight for mechanics in every field."

Fred Newton, corporate vice president and branch manager of Hurley Electronics, Inc., suppliers of radio and television repair parts, components and tools, testified that his company sells the imported article, which he identifies as Flex-O-Flash and which is purchased from Aqua Dynamics, to its repair customers. Asked as to how his company sells the imported article, the witness answered (R. 208–209):

> A. Well, if anybody has ever seen the inside of a television set they know that there are components, behind components, so in order to identify them without removing the entire unit sometimes it's convenient to be able to go around a corner with a light and illuminate the object.

Mr. Newton said that he considered the imported article to be a flashlight with a gooseneck.

Plaintiff contends that the imported article is not a flashlight because the common understanding of a flashlight is that it possesses a design function namely, a reflector, giving it a capacity of projecting a directed beam of light, a facility which the imported inspection light lacks. Defendant contends that the imported merchandise falls within the common meaning of the term flashlight.

The court agrees with defendant in this case. The imported article is a flashlight within the meaning of item 683.70, in the opinion of the court. *Webster's Third New International Dictionary* (1961), contemporaneous with the promulgation of the TSUS, defines the term flashlight as "a small battery-operated portable electric light." This definition, cited approvingly by this court in *Biddle Purchasing Co. v. United States*, 48 Cust. Ct. 251, 257, C.D. 2345 (1962), *aff'd*, 50 CCPA 71, C.A.D. 823 (1963), is expressive of the common meaning of the term flashlight. And it is to be noted that this definition is broad based, and is not circumscribed by usage or any physical devices as would influence usage. Hence, as the evidence in this record demonstrates, a wide variety of articles are bought, sold, and known as flashlights.

With respect to the article in issue, there can be no doubt but that it fits comfortably within the ambit of the definition. It is small,

battery-operated ,and portable, and is, *a fortiori,* an electric light. The fact that the imported article is also known specifically as an inspection light does not change its character as a flashlight. This description only serves to emphasize its adaptation to a specific use, as is the case with other types of flashlights. It is, nevertheless, a *species* of flashlight. And the instant record makes abundantly clear the fact that within the trade and commerce of the United States the imported article and other articles of this class and kind are marketed as, and considered to be, inspection flashlights.

Moreover, the court can find no rational basis for differentiating between the imported article and the *genus* flashlight in terms of a reflector, as plaintiff is disposed to do. Modern technology has found a way to utilize the lamp or bulb to concentrate the emitted light and project a beam of light via a lens if that be desirable, and thereby obviate the use of a reflector which accomplishes the same result. This achievement has undoubtedly contributed to the reduction in size of flashlights (as witness the small penlite type of flashlight) and, as in this case, the extension of the light source beyond the battery case to attain a more diversified and specialized use of the flashlight. But in the court's view, nothing has emerged from this change which suggests a different nomenclature for articles featuring it. It is well settled in customs jurisprudence that an *eo nomine* designation will cover all forms of an article. *T. M. Duche & Sons, Inc., et al.* v. *United States,* 44 CCPA 60, C.A.D. 638 (1957); *Crosse & Blackwell Co.* v. *United States,* 36 CCPA 33, C.A.D. 393 (1948); *Nootka Packing Co. et al.* v. *United States,* 22 CCPA 464, T.D. 47464 (1935). And this principle is applicable to the facts in the instant case.

For the reasons stated the district director was correct in classifying the imported article as a flashlight, and plaintiff has failed to sustain the issuable allegations in the complaint. Judgment will be entered herein accordingly.